Thank you. May it please the Court. The appellants, OTC, I'm going to refer to them as OTC for purposes of brevity. We're here asking the Court to reverse an order of the District Court that entered summary judgment against OTC on four of its five claims. Those claims were based on the Fair Housing Act. We are also asking the Court to reverse a dismissal of the fifth count, which was a due process violation, which was dismissed with prejudice under Rule 12b-6. The District Court committed reversible error in dismissing count five, the due process claim with prejudice, because the Court went beyond the four corners of the complaint in finding that the City's proffered basis for the water meter policy was rational. Can I ask you a question about that? Believe it or not, this is a question I was asked in my Senate Judiciary Committee hearing about the nature of rational basis review. I mean, isn't the very nature of rational basis review such that a Court, after the fact, can sort of cook up some conceivable justification? It doesn't have to be the City's ear articulated justification. It just has to be a conceivable justification. I will concede, Your Honor, that the rational basis analysis is very broad. However, this is a 12b-6 motion. The Court is limited to construing the facts on the four corners of the complaint, and it's required to construe the allegations of the complaint in the light most favorable to the non-moving party. What about the ICBA decision on plausibility? We look for alternative explanations that would be a valid exercise of the police power. Understood, Your Honor. No question they're exercising the police power. Do you agree with that? I understand where Your Honor is going with respect to the plausibility argument. However, that does, in a 12b-6 context, go outside the four corners of the complaint. The rational basis has to be rational. I'm going with it in the complaint. They exercise their police power doing an inherently governmental thing, and that is water and sewer. Understood, Your Honor. The problem with the City's rational basis asserted, which they asserted was implementing a water study. They had had a private contractor do a water study that recommended base rate increases across the board citywide. The City adopted an ordinance that implemented the exact rate ordinance changes that were recommended by the water study. However, they also included this water meter billing classification change, which affected only multifamily projects. They went from billing multifamily master metered projects based on the number of meters to the number of units. That increased the burden on OTC. We understand all that. What I'm getting at is, and what is alleged in the complaint, is that the water study didn't recommend this classification change. Does that matter? It does matter because there is no rational basis between the City's interest in funding the utility, which was outlined in the water study, and this change in classification. I would think that there's easily a conceivably rational basis. They want to boost utility revenues to fund the thing. Any rate increase is conceivably rationally related to that end. And they did that. They increased the base rates in accordance with the water study across the board. What they also did was went outside the water study and they tried to rectify what was essentially a permitting problem. They had permitted a master meter community, OTC, in violation of a zoning ordinance, and they tried to fix that through this ordinance change, which increased the burden on one customer. And the water study didn't recommend any additional burden on one customer. Let me ask the question this way. I agree with you on 12B. It's an odd case because a piece of it comes up on 12B6 and a piece on summary judgment, and it could have been very easy to simply convert the 12B6 into summary judgment and consider the entire record. The court doesn't do that, nor does it provide notice. So we're here on 12B6. But the district court cites three things as providing a rational basis. Paragraphs 28, more particularly paragraph 29, and what was appended to the complaint was Exhibit A, Resolution 2576. I read those paragraphs, 28, 29, and Exhibit A together, and it struck me that that stated a rational basis. It required a new sanitary system. They were beginning a five-year consolidation process. They wanted to adjust fees to fund the process. They wanted to take into account the historical nature of the transaction. Why wasn't the fiscal integrity of the city a sufficient justification? You might disagree, and you might say, nah, they could have done it better. They could have done it differently. But given the breadth of rational basis scrutiny, as Judge Newsom pointed out to you, why wouldn't this be rational? Well, Your Honor, the converse of rational is arbitrary. And without a backup in the rate study, the change in classification was truly arbitrary. The funding was established by the water study, which showed a gradual Nothing in the complaint that I see that definitively says that you have a conclusory statement, that they went beyond the study. That's all. We say that, Your Honor. We say that the policy, the city, paragraph 29 of the complaint I've got it right here. Which is on which the court relied and found the rational basis alleged was that Okay, they found it on that. But it could be found on other things also, things that are implicit in the study. The study was done because they were having difficulty. Correct, Your Honor. Okay. And the difficulty had to do with money. And actually, they weren't actually having difficulty because the utility was actually running profitably. No, no, no, no, not the utility. I'm talking about the city. Okay. The city Do you agree with that? I can't affirm or Do you disagree with Judge Marcus' observation that it had to do with money? No, I agree that the utility, the ordinance itself had to do with money. And also other rate payers. Your Honor, the problem is if the city was relying on the rate study, which is what it has contended from the beginning, is that it is relying on implementing the rate study. If that was what it was doing, then by changing the classification for OTC and multifamily, master metered multifamily, it went outside the rate study. If it was going to do that It had to do with rates though, didn't it? I'm sorry? It yielded a different rate. No, it adopted the exact rate implemented by the water study. And yet it still got another $84,000 in annual revenue increases from OTC based on the meter classification. Our argument is that if it was going to implement the rate study and establish what the city's rates were, then when it changed the classification, it also should have reduced the rate increase citywide. It didn't do that. It adopted the citywide rate increase that was recommended by the water study and then did extra. It just seems to me like what you're saying on rational basis review is the city's articulated justification for this is not true. And I just don't know that on rational basis review, that's a winner. I mean, I think courts generally as a matter of law can go sort of beyond the articulated justification and say, even if that one is wrong, might there have been some other one that rationally supports the stated interest? I think at the 12B6 stage though, Your Honor, the court is confined. It is a procedural bar. It is not a substantive bar. At the subject judgment stage The problem with that assertion is that our case law is clear that if a court can hypothesize a rational basis, whether offered by the party or not, and there is a rational basis that you can hypothesize, that's it. That's the end of the inquiry. Your argument is that it locks us out of any analysis outside of what you say we should be looking at. I mean, you want us to say that in a written opinion, that henceforth we can't do that. No, but when the rational basis that is pled is proven to be irrational because it doesn't bear a relationship to what the city was using to implement its rate increase, then you can't connect the rationality. The problem is the action bears no relationship to the intent. Well, they had a study, and then who was it that created the ordinance? The city council? Correct. Okay. We don't know what happened at the city council. Well, we can compare the rate study. We know, we understand they had a study, and they were acting pursuant to the study, but we don't know what else they were doing when they decided to do what you're complaining about. Well, we know what they did because we've taken their positions. We know what they did, but we can't consider whether or not that was rational. Correct. You have to look at what was on the four corners of the complaint. And we can't consider it because you tell us we can't. Because it's not evident outside the four corners. Because you didn't allege it in the complaint. Correct. You would never allege a rational basis that was legitimate in a complaint, would you? We wouldn't, and Your Honor, that's why- No, no plaintiff would. But that's why the court went too far and tried to find this. Well, in Kentner, for example, in Kentner v. City of Sanibel, I believe the case- All of this goes back to the village of Euclid, doesn't it? It might. Oh, no, it all does. That's the Supreme Court's anchor. Correct, Your Honor, but- And we talk about the police power, health and welfare. Certainly, Your Honor, and there's no dispute that the city has that power. The problem is with pleading that- And they exercised it. They exercised their police power. They did, Your Honor. Okay. And I think the parties agreed that this was a legislative action and there was no question about that. Tell me in the remaining time you have about disparate impact. The disparate impact, our issue on summary judgment, Your Honor, was that the court resolved issues of material fact. It weighed the evidence. It's evident on beginning at page 18 of the court's order that the OTC put on evidence and the- But the district court says more than that. The district court says as a matter of law that you didn't produce any of the kind of statistical evidence that you would be required to produce in order to establish disparate impact. I'm talking about just one of the three grounds upon which the district court went off. Why was he wrong about that? Well, Your Honor, I think with respect to the causation- I'm talking about disparate impact now, and I'm talking specifically about the proofs that you mounted to establish a sufficient statistical basis for disparate impact. Yes, Your Honor. And there are three- It has been codified that disparate impact is proven with three elements. The first is causation. And it was the causation element that the court had trouble with. Unfortunately, I think the court read into the causation element a requirement for intent and culpability, a standard that does not exist. The only thing at the causation stage that the plaintiff has to show is that the challenge practice caused or predictably will cause a discriminatory effect. To get to causation, don't you have to show that OTC would have suffered financial hardship and therefore would have had to close and therefore would have had to turn people away? A question I have for you is, you've been essentially dared in the red brief to please talk about the liquidity guarantees, and you haven't. Why doesn't that failure kill, sever the causal chain? At this stage, that is absolutely something that we should have to address at trial. However, at the summary judgment stage, we had Paul Missingman's affidavit, which he is the financial officer of these companies. He said, we cannot continue to sustain ourselves with the debt service that we have, including unsecured debt, and we will not survive. And if that happens, 236 units of low-income housing, which serves 75% minorities, will close. In the face of documentary evidence of these guarantees, that I guess I kept hoping, when I read the gray brief, I kept thinking, she's going to talk about the liquidity guarantees. And when you didn't, I just thought, isn't the causal chain severed at this point? It's not, Your Honor, because if you look at the affidavits and you look at the documents and the expert report, the guarantees do not cover all of the debt. And the guarantors have an interest not necessarily consistent with continuing this as low-income housing. The difficulty for me is that this is the first time I'm now being educated about the extent and nature of the guarantees. And I would argue that that demonstrates exactly why summary judgment was inappropriate here, because we had the fundamental factual question of whether or not OTC would be forced to close by the enactment of this policy. I'm going to reserve the rest of my time. Thank you. Mr. Roper? Good morning, Your Honors. Donovan Roper for the City of Oviedo. I'd like to address Judge Marcus' point on the 12B6 nature of the substantive due process violation. In the court record, the discovery cutoff was April 6, 2017. The second amended complaint, which for the first time added that count, was filed later on April 18th of 2017. That's why the judge dealt with it in a 12B6 motion and cited Kentner v. City of Sanibel and stated that because the Legislative Act exception happens here, which protects against arbitrary and irrational actions by the government, the rational basis review applied.  of establishing that a policy is arbitrary and not rationally related to a legitimate government purpose. And that's Cook v. Bennett, a case from this court back in 2015 and also Kentner again v. City of Sanibel. What is the basis for the policy? That is in the record in document 56-2, page 62, which states PRMG's rate study in 2012. Is this part of the count 5? Yes, sir. This goes to the basis of the study and then the basis for the adoption by the City of Oviedo in passing the resolution that adopted the study in full. I'm just looking to see if count 5 doesn't incorporate any of... Yes, it incorporates 42 paragraphs. So it incorporated the study. Correct, sir. So it incorporates paragraphs 28 and 29 of the complaint and the policy itself. Yes, sir. And what the PRMG rate study shows is that this is a revenue sufficiency and utility rate study. The utility fund should collect revenues equal to the cost of services provided by the system and the city should establish rates sufficient to cover the cost of operating, maintaining, repairing, and financing the system. Robert Ori, president of PRMG, who conducted that rate study, testified in his affidavit, document 60-1, paragraph 6. Right, but can we review that? Is that relevant for purposes of 12b-6? Are we not limited, A, to the complaint and, B, to the policy? And any hypothetical, rational basis we can find. Are we free, put differently, to look at extrinsic evidence, including a deposition or a statement that isn't part of the complaint and isn't cited in the complaint? In a 12b-6 fashion in which discovery cutoffs already taken place several days beforehand and in the posture that the case was at the time, looking at the four corners of the second amended complaint and specifically that allegation... Right, but you've just cited something, Mr. Roper, that goes beyond the four corners of the complaint and the attached policy. Well, what they were alleging... Or have I misapprehended what you were referencing? No, maybe I didn't make myself clear. What is clear, though, in the judge's ruling is that the entire basis for not only the study that PRMG rendered but also the resolution was clearly related to a legitimate government objective and not arbitrary. One has to remember here that what is being challenged is not the policy itself but the city of Oviedo's refusal to grant an exception to that policy. Well, there's nothing in the adoption that provides for any exception or judicial review or review before anybody. That is correct, Your Honor. I agree that if they were complaining about the exception, they don't have a substantive due process claim. It's kind of like a takings claim then. That is a very... Yeah, go ahead. The very nature of this cause of action, though, is challenging the refusal to grant the exception to the policy. They are attacking the policy in this particular count, count five, saying that it's arbitrary and it's not rationally related to a legitimate government basis when clearly it is. I'd like to move on to what I feel are the more important issues that was only touched on basically, very briefly in opening arguments by opposing counsel and that is the prima facie case and also proximate causation. To establish discriminatory effect and demonstrate that housing has become discriminatorily unavailable to protected class, a plaintiff can show either that the decision has a segregative effect or two, that it makes housing options significantly more restrictive for members of a protected group in comparison to persons outside that group. That was the holding of this court in Hallmark Development versus Fulton County back in 2006. Trial Court relates that on page nine of its order. Now, in this particular case, the U.S. Supreme Court case in 2015 of inclusive properties talks about that very issue. What is necessary? It puts sort of a gloss on Hallmark whatever we said there. Do you agree? I mean, that's the last word. That's Horenboek Law. That's Horenboek Law. In 2015, though, the U.S. Supreme Court comes out with inclusive properties and they adopt the HUD regulations found at 24 CFR 100.500 C1 and they say specifically in order to prove a disparate impact FHA claim under the first element under the regulation the plaintiff must first make a prima facie showing of disparate impact. That is, and I'm quoting from the regulation, the plaintiff has a burden of proving that a challenge practice caused or predictably will cause a discriminatory effect. If a statistical discrepancy is caused by factors other than the defendant's policy plaintiff cannot establish a prima facie case and there is no liability. Now in this case, all we have is a demographic survey of how many minority folks lived in OTC versus non-minority folks and it came up with 76% were minorities and how many in the village all together? And 24% were white. It doesn't go any further. It doesn't connect the dots. It doesn't connect a cause or relationship to other populations outside of Oviedo Town Center or to anyone in the general. So the statistical base they used was wrong. Correct. Comparison was wrong. They limited the comparison statistically simply to the folks who lived within this unit rather than looking at it on a citywide basis. That's your point. And that is exactly the kind of rationale that the U.S. Supreme Court threw out in a very similar scenario in inclusive communities and also that this court in Schwartz versus City of Treasure Island threw out in the case of a halfway house in the City of Treasure Island for recovering drug addicts because all they produced was a similar survey saying the folks who are recovering drug addicts in this facility will be thrown out onto the street. They did not show that the need for housing for recovering drug addicts exceeded that in the community for non-drug addicts in need of halfway houses. Do we know on this record what the result would have been if they had used the proper comparative by your lights? That is to say there's nothing in the record on that. Do you understand the thrust of my question? In the OTC 75% were minority 25% majority. In the city, the minority population was, I don't know, 30%, 32% and the majority was 66%. The only comparison they make is the former, not the latter. Do we know anything about the latter? That is to say if we used the citywide comparatives which we held, you had to do in that Schwartz case? There was no discovery done whatsoever and no evidence submitted whatsoever. The point then boils down to simply the district court was right because to mount the kind of statistical impact case they want to mount, they've got to have the right kind of showing and the comparison they made was fundamentally wrong. Agreed and I think that the inclusive communities Supreme Court case on page 2523 takes it one step further on that first step proving a prima facie case. The Supreme Court focused on the fact that the plaintiffs need to demonstrate a robust causality requirement. Now when you look up under Oxford dictionaries as to the term robust, it says uncompromising and forceful. When one looks at Merriam-Webster dictionary it's having or exhibiting strength strongly formed or constructed. We don't have that here. There's no robust causality met at all. Additionally, in this particular case, this is a one-time decision. Again, the decision by the city of Oviedo to deny an exception to their rational basis policy of imposing uniform fair and equitable utility rates that will take care of the bond obligations. In inclusive communities, they came up with three hypothetical scenarios in which they pointed out it would be very difficult for a plaintiff to demonstrate the required causal connection such as a one-time decision by the government as opposed to the policy it has. That's exactly what we have here. Interestingly enough, about two weeks ago, the Fourth Circuit in the case of REYES versus WAPL Mobile Home Part Limited and that's a case if you need the site I can supply it for you. They addressed the very same issues in this context superimposed over a survey that simply said 5% of the workforce was non-white and 95% of the workforce was white. That's just a bare statistical discrepancy that doesn't prove anything. Moving to approximate causation because not only do plaintiffs have to prove a prima facie case and certainly on element two If they're wrong about the prima facie do we even have to address the other question? I don't think so your honor but I think that if you're looking at the proximate cause issue that is woefully short on that too because in the Bank of America versus City of Miami case obviously they talked about foreseeability alone and an FHA situation is not enough and proximate cause analysis is controlled by the nature of the statutory cause of action. The question is if the harm alleged has a sufficiently close connection to the conduct the statute prohibits. But the opinion is studiously vague on what it is to be. And we're struggling in that case to discern exactly how direct is direct enough is it one to one or can you have an interview one step in between but do we have to get to that question is all I'm asking you in this case if the district court was otherwise correct about the prima facie showing? I don't think so your honor. I don't think so but assuming arguendo that somehow that even meets muster you still can't get past the proximate cause in this case because although they were vague the Supreme Court does say that the FHA requires some direct relation between the injury asserted and the injurious conduct alleged they talk about directness principles and that fact that there has to be a close connection between the injury and the conduct complained of and it cannot be remote. There is no evidence here whatsoever as why would it be remote here it's the if the harm is they charged me more than they should have by calculating it in a certain kind of way we had to pay more money and we simply couldn't sustain it. Our injury was direct, it was immediate and it was a function of this change in policy why isn't that sufficiently close and direct to meet whatever requirement proximate cause requires in this context? Well there is no direct relation between the passing of that resolution and the enactment of that resolution and the facts in this case. The facts in this case showed instead that for the first four years of its existence Oviedo Town Center had their tenants paying their own utilities the facts also showed that the city of Oviedo automatically underbilled this particular facility to the tune of $402,000 over five years. That's in the record it was an audit that was conducted and Jerry Boop our finance director from the city testified that when they conducted this audit they caught that error what you are talking about price difference wise here and this is an important point to make is that Oviedo Town Center for five years between 2008 and November 30th of 2011 was being charged at the basis of eight single family homes for the twelve blocks they had there instead of the 236 apartments now of those 236 apartments in Oviedo Town Center 67 of them are one bedroom one bath 45 of them are two bedroom two baths 76 of them are three bedroom two baths and 48 of them are four bedroom three baths that's a total of 577 bedrooms and 453 bathrooms so for five years they are being charged at the rate of eight single family homes which is dramatically obviously by the numbers $402,000 what they are asking you essentially to do is to reinstitute that old error and go back to the old system and not harm their profit margin now the incredible thing here is that as of October of last year OTC went back to that old system that they had in place for the first four years of having their tenants pay that in footnote 1 on page 14 of our brief we cite to four cases in the county court down in Seminole County in which Oviedo Town Center has sued to evict four of their tenants and guess what in August of 2017 when the landlord is still paying the rent if you look at paragraph 7 of the lease it says we pay the following and it has the box for water and waste water checked but then two months later in October and November of 2017 in two other lawsuits that is removed those checks from those boxes are removed and now the tenants pay in the record yes sir that actually we requested that you take judicial notice of that because well we can take judicial notice we can't take judicial notice of facts I suppose well the reason I bring that up is because their whole argument here is that our denial of this exception is driving them out of business and that they can't change their practice another point well in fact they can you heard what she had to say about the guarantee yes sir what's your understanding of the strength of the guarantee or the extent of it I'll put it that way the guarantee is very complete it says specifically the first one is the operating deficit guarantee that means the plaintiff's partnership agreements required the general partners to finance operating deficiency with non interest bearing loads that's the first one secondly there were two additional guarantees Allen Ginsberg individually as well as his related trust the Allen Ginsberg trust provided operating and completion guarantees and an individual recourse guarantee for the full amount of the sale loan for the life of those loans that's what it guaranteed and of course the recourse you can go after that from personal assets not just from the collateral it guaranteed the whole thing that's what I thought in our forensic accountants affidavit Gail Markham's affidavit she specifically says that guarantees it against failure plaintiffs never rebutted that  thank you very much your honors Ms. Dixon thank you your honor and very quickly I'll say that the last five minutes of Mr. Roper's argument really demonstrated the existence of material facts that should have been resolved by a jury the issue that Mr. Roper asked the court to take judicial notice of is improper because it's outside of the record he asks in the brief for the court to take judicial notice of these exterior cases with respect to the rent the rent is a the rent is a red herring your honor under the agreements that OTC has with the housing authority it is capped on how much gross rent including utilities that it can charge its tenants so whether the tenant pays the utilities or OTC pays the utilities the burden is effectively on OTC because if the tenant pays the utility the rent is decreased by the amount of the utility that they paid that is in the record again those are issues of material fact that the court weighed in favor of one party over the other which was improper at this stage can you help me with this disparate impact again and the statistical showing the pre-inclusive case Schwartz versus the city of Treasure Island we said we held that a comparison had to be made between members of the protective class throughout the city that are affected by the ordinance and non-members throughout the city affected by the ordinance they didn't do that and it was fatal in that case in this case the district court followed what we had said there and said specifically to explain how you could have but did not meet your burden he said and I quote plaintiffs may have satisfied their burden was statistical evidence demonstrating a comparison between one X percent of racial minorities occupying multifamily properties in the city and paying per unit base charges and two Y percent of non-minorities occupying multifamily properties in the city paying per unit charges but because you had completely failed to present any relevant comparative evidence your claim necessarily failed on disparate impact because the comparison you drew was limited to the minority majority breakdown only within the OTC rather than citywide. Why isn't that fatal? Because your honor OTC is the only project that was impacted by the ordinance unlike the other case that you mentioned which the ordinance applied citywide in this case with the fair housing claim the claim is that the failure to grant the exception was what violated fair housing OTC was the only multifamilied master metered community in the city of Oviedo that was impacted by this meter change ordinance. That was in the deposition of Mr. Boop who is the city's finance director. Isn't he also the fellow who said the reason for that is because there was this loophole caught by our auditor we've been underbilling these people by $402,000 or whatever for a long time to bring them up to level playing field with everyone else. They weren't underbilling they approved a master metered community the problem was their zoning ordinance didn't allow for master metered communities but OTC didn't know that they applied for master meters the city installed master meters and then they did their financial projections based on what that master meter community was going to look like over the next 5, 10, 15, 20 years the problem is the city tried to do through a rate ordinance what it couldn't do which was revoke the permit that it had previously given for the master metered community so the idea that this should have been that OTC can't prove causation is specious but for this rate change OTC would not have to close they would not have to displace 75% of its tenants, 75% of which are minorities. Thank you. Hillcrest property versus Pasco County Mr. Hemke May it please the court My name is Don